## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATHENA MICHELLE LYSAK, | : | CIVIL ACTION NO. 2:09-00184 |
| Plaintiff, | : | |
| v. | : | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | : | THE HON. WILLIAM J. MARTINI |
| | : | |
| Defendant. | | |

### MEMORANDUM OPINION

Plaintiff Athena Michelle Lysak brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act as amended, seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB"). On appeal to this Court, Plaintiff contends that the Commissioner's administrative decision disallowing her claim lacks any substantial medical or other evidence in the record and must be reversed or remanded. Having considered the parties' filings, and the law, and for the reasons articulated below, the Commissioner's decision will be **VACATED** and **REMANDED** for reconsideration consistent with the opinion.

## I.    FACTUAL BACKROUND AND PROCEDURAL POSTURE

Plaintiff filed for DIB and SSIB on January 25, 2006 and February 15, 2006 respectively. The filings alleged disability resulting from severe medical impairments related to cardiac, orthopedic, neurological, psychiatric and visual ailments. Plaintiff

alleges disability as of October 3, 2005 and claims to be unable to perform work or gainful employment.

Administrative Law Judge ("ALJ") Dennis O'Leary denied Plaintiff's claim on July 18, 2008. The Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which denied the request for review on November 14, 2008, effectively affirming the ALJ's ruling. *See* Letter from Office of Disability Adjudication and Review to Athena Lysak: Notice of Appeals Counsel Action (Nov. 14, 2008) (Tr. 5). On January 14, 2009, Plaintiff filed in this Court a Complaint, (Doc. No. 1), bringing suit against the Commissioner of Social Security. The Complaint seeks to reverse the Commissioner's decision denying benefits, or to vacate and remand the case for a new hearing. The matter has been briefed. (*See* Docs. No. 8 (Plaintiff's brief) & Doc. No. 9 (Defendant's brief).)

## II.     STANDARD OF REVIEW

A reviewing district court must affirm an ALJ's ruling if the decision was based on the correct legal standard and if the factual findings are supported by substantial evidence in the record. 42 U.S.C. §§ 405(g), 1383(c)(3); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008) (citations omitted).

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful

activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairments qualify as "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the Commissioner inquires in step three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the *Listing of Impairments*. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

This Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence does not speak to the amount of evidence, but rather "such relevant evidence which, considering the record as a whole, a reasonable person

3

might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance"). Under this standard of review a court will affirm the ALJ's determination if the administrative record, in its entirety, yields such substantial evidence as would allow a reasonable mind to support the conclusions reached.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff's claim was analyzed under the aforementioned five-step process used by the Social Security Administration to determine benefits eligibility. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the date of alleged disability. (ALJ Op. 3, Tr. 16.) This finding is not contested by either party. Proceeding to step two, the ALJ found that the Plaintiff had numerous severe impairments including: "congenital aortic stenosis with status-post aortic valve replacement, right retinal artery embolus with residual loss of vision of the right eye . . . right arm/wrist pain syndrome and anxiety and depressive disorders." (*Id.*) Proceeding to the third step, the ALJ found that these ailments, individually or in combination, were not equal to any of those found in the *Listing of Impairments* within the regulations. (ALJ Op. 4-5, Tr. 17-18); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. The ALJ determined that the Plaintiff's RFC was sufficient for sedentary work which would not require continuous "fine fingering manipulation" with her right upper extremity, binocular vision, working at heights or around machinery. (ALJ Op. 6, Tr. 19.) Because

of mental limitations, the ALJ found that Plaintiff could only perform work which "entails understanding; carrying out ands [sic] remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine setting." (*Id.*) At step four, the ALJ recommended that the Plaintiff avoid complex and high-pressure jobs and thus concluded that she could not return to her previous job as an administrative assistant. (ALJ Op. 9, Tr. 22.) During the final step, the ALJ determined that there were a significant number of other positions in the national economy that Plaintiff could obtain, including being a surveillance system monitor, cutter-paster, and weight tester. (ALJ Op. 10, Tr. 23.) Plaintiff contests that the ALJ's determinations were flawed in steps two, three, four and five.

## IV.   ANALYSIS

On appeal to this Court, Plaintiff puts forth several arguments in support of her position. Although this opinion addresses each of Plaintiff's contentions, it pays particular attention to arguments relating to the ALJ's mental RFC analysis because the Court will order remand in connection with defects in that analysis.

### A.   STEP TWO: AILMENTS OMMITTED BY THE ALJ AS "SEVERE IMPAIRMENTS"

Step two of the eligibility process requires the Commissioner to determine if the claimant's alleged impairments qualify as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). The Court notes that the ALJ found that the Plaintiff had numerous "severe impairments," including: "congenital aortic stenosis with status-post aortic valve replacement, right retinal artery embolus with residual loss of vision of the right eye . . . right arm/wrist pain syndrome and anxiety and depressive disorders." (ALJ

Op. 3, Tr. 16.) Plaintiff argues that the ALJ should have found other "severe" ailments, including migraine headaches, a right ankle fracture and a cerebrovascular accident. (Pl. Br. 15-27).

The regulations state that an impairment is not severe "if it does not significantly limit [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

### 1.    Headaches

Plaintiff has complained of migraine headaches which she says have left her unable to work. Test. of Athena Lysak at Oral Hr'g (Jan. 31, 2008) (Tr. 278). The ALJ explained in his opinion that the evidence did not establish that her "migraine headaches" were of a "debilitating nature." (ALJ Op. 7, Tr. 20.) Based on a letter supplied by Dr. Warner, Plaintiff's treating neurologist, the Plaintiff argues that the ALJ's findings are in error. (Pl. Br. 23-24).

The Plaintiff has a history of headaches that date back to approximately age 12. (ALJ Op. 7, Tr. 20.) The ALJ determined in his opinion that "there is no evidence that [Claimant's] headaches have been diagnosed as migraine related." (*Id.*) The ALJ also specifically refers to the opinion of Dr. Warner in deciding that there is "no evidence of a neurological etiology." (*Id.*) As Plaintiff's attorney quite properly points out, this "finding seems strange" in light of Dr. Warner's letter which seems to suggest otherwise. (*See* Pl. Br. 24 (quoting Letter from Dr. Carolyn Warner to Dr. Vance Webber (Feb. 9, 2007) (Tr. 190-192)).) Nevertheless, the Court concludes, as did the ALJ, that Dr. Warner's

6

letter is insufficient by itself to establish that Plaintiff had a disability that limited her "ability to do basic work activities." 20 C.F.R. § 404.1521(a).

The regulations require that "allegations of pain and other subjective symptoms must be supported by *objective medical evidence*." *Hartranft*, 181 F.3d at 362 (emphasis added). Objective medical evidence is defined as "evidence obtained from the application of medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 404.1529(c)(2). Dr. Warner's opinion does not provide objective medical evidence that the migraine headaches were caused by any "anatomical, physiological, or psychological abnormalities." 20 C.F.R. § 404.1529(b). Moreover, the extract from Dr. Warner's letter quoted in Plaintiff's brief fails to describe any "clinical … diagnostic techniques" which Dr. Warner (may have) used prior to issuing his opinion. Likewise, there is evidence in the record showing that the Plaintiff underwent a CT scan of the head that "showed no acute pathology." Letter from Dr. Nazar H. Haidri to CareCore National (Feb. 15, 2007) (Tr. 180-181). Likewise, subjective symptoms of pain, as those alleged here, are not enough to establish an impairment absent objective medical evidence. 20 C.F.R. §§ 404.1528(a); 416.928(a); 404.1529(c)(2); 416.929(c)(2); *see Hannon v. Astrue*, Civil Action No. 07-1053, 2008 U.S. Dist. LEXIS 28776, at *4, 2008 WL 1376684, at *2 (E.D. Pa. April 8, 2008) (states that migraine headaches based solely on subjective complaints do not establish an impairment).

In the present case the ALJ made his findings about Plaintiff's headaches based on all the relevant probative evidence, 20 C.F.R. § 404.1527(b), including: the opinions of Dr. Warner, direct testimony of the Plaintiff, as well as her ability to perform substantial

gainful activity despite an apparent long history of headaches. (ALJ Op. 7, Tr. 20.) Plaintiff had told her neurologist that the headaches first began at age 12, yet she was able to work steadily for 7 years despite Plaintiff's claims that they were of a debilitating nature. (ALJ Op. 4, 7, Tr. 17, 20.) The regulations specifically allow the ALJ to consider "efforts to work" made by the Plaintiff in their determination of disability. 20 C.F.R. § 404.1529(a). The headaches were preexisting to the period of disability and the Plaintiff had previously held gainful employment notwithstanding the condition. (ALJ Op. 7, Tr. 20.) The Court finds no error.

### 2.    Right Ankle Fracture

Plaintiff's right ankle fracture occurred roughly 8 years prior to the start of her claimed disability, apparently sometime in 1997. (ALJ Op. 4, Tr. 17.) The ALJ concluded that there was "no evidence of any gait disturbance or other related residual orthopedic impairment to the ankle." (*Id.*) The record contains three different physicians' opinions explaining that Plaintiff's gait was "normal" after the date of alleged disability. (Tr. 137, 185 & 191.) One of these physicians was Plaintiff's own expert. The ALJ's ruling notes that the Plaintiff performed substantial gainful activity post-fracture but prior to the alleged onset of disability, on October 3, 2005, and that no evidence was presented to suggest a severe impairment associated with the fracture at the time of the onset of the alleged disability or since. (ALJ Op. 3-4, Tr. 16-17.)

Plaintiff argues that the ALJ ignored the standard for determining whether an impairment is "severe." (Pl. Br. 24-25.) Again, the regulations state that an impairment is not severe "if it does not significantly limit [claimant's] physical or mental ability to do

8

basic work activities." 20 C.F.R. § 404.1521(a). Plaintiff's own brief does not dispute that she "worked after sustaining the injury and the surgery" related to her right ankle. (Pl. Br. 24.) The regulations allow the ALJ to consider in his determination "efforts to work" made by the Plaintiff at or after the onset of disability. 20 C.F.R. § 404.1529(a). This seems to adequately support the ALJ's finding that the right ankle ailment was not "severe."

Alternatively, the Plaintiff argues that the ALJ's decision to further reduce Plaintiff's RFC from "light" to "sedentary work" in step four constitutes evidence that the ailment was "severe" at step two. (Pl. Br. 25 & n.4.) Plaintiff, however, puts forward no law, no statute, no regulation, no case, no treatise or article, supporting this proposition.

Finally, Plaintiff argues that the ALJ's evaluation of the right ankle fracture was incomplete because it failed to address: "[t]he pain experienced by the plaintiff while standing and walking [which] limits her ability to sustain such activity six to eight hours a day and thus precludes her ability to perform light work." (Pl. Br. 25.) Plaintiff's argument above is unsupported by any citations to the case record. Likewise, Plaintiff's brief fails to cite any laboratory or clinical tests objectively establishing pain connected to this condition. It seems to follow that the ALJ did not err on these points.

### 3.    Cerebrovascular Accident

In September 2004, the Plaintiff suffered from a stroke, referred to as a "cerebrovascular accident" ("CVA") in her medical record. (Tr. 149.) The CVA resulted in Plaintiff's losing sight in her right eye, an impairment that the ALJ classified as "severe." (ALJ Op. 3-4, Tr. 16-17.) Plaintiff argues:

> [T]he [ALJ's] decision seems to pretend that the claimant has no residuals from [the CVA] … other than blindness in her right eye. Plaintiff had a stroke,[1] has weakness in her right arm proven on EMG,[2] is on life-long blood-thinners,[3] suffers migraine headaches,[4] has difficulty grasping and gripping with her right hand,[5] suffers from fatigue and anemia[6] (Tr. 185). All of these are directly attributable to plaintiff's stroke and the larger picture of plaintiff's cardiovascular disease.

(Pl. Br. 26 (footnotes added).)

Plaintiff clearly has a history of cardiovascular ailments, as noted by the ALJ in his opinion. (ALJ Op. 4, Tr. 17.) Plaintiff underwent aortic valve replacement procedures in both 1990 and 2001 – all prior to the alleged onset of disability. (*Id.*) The ALJ classified the Plaintiff's "congenital aortic stenosis with status-post aortic valve replacement" as one of her "severe impairments." (ALJ Op. 3, Tr. 16.) Unlike the loss of vision in her right eye, which was diagnosed as being medically related to the CVA, the Plaintiff has not demonstrated an etiology between her aortic impairments and her

---

[1] It might be argued that the "stroke" or CVA, standing alone, is not in itself relevant to the inquiry, except to the extent that its symptoms significantly limit the claimant's ability to do basic work activities. To discuss both the stroke *and* its symptoms would appear to be, in a sense, double counting during the step two analysis.

[2] "[W]eakness in her right arm" is not mentioned at the transcript page cited by Plaintiff; moreover, Plaintiff's position was expressly contradicted by the ALJ. *See* ALJ Op. 4, Tr. 17 ("The results of electromyographic (EMG) studies of the right upper extremity were normal …."); Tr. 180 (same) (Dr. Haidri letter). If there is evidence in the record supporting Plaintiff's position, the Court is unaware of its location. *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (*per curiam*) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[3] Plaintiff makes no argument to the effect that merely taking medication – i.e., blood thinners – is indicative of any limit, much less a significant limit, on the claimant's ability to do basic work activities.

[4] The Court discussed Plaintiff's migraine headaches in Section IV[A][1], *supra*.

[5] The Court sees no statement in Dr. Haidri's report, the document cited by Plaintiff, connecting Plaintiff's right-hand difficulties to the CVA. Nor does Haidri's report clarify what objective medical evidence supports his findings. Finally, Plaintiff makes no argument in regard to the severity of this condition. These same difficulties apply to Plaintiff's claims relating to "fatigue and anemia."

[6] *Id*.

subsequent CVA. In other words, Plaintiff has failed to demonstrate that the first-in-time aortic impairments caused or were substantially linked to the next-in-time CVA, and Plaintiff has failed to cite evidence in the record linking the alleged residual conditions, described above, to the CVA.

Relying on the medical record itself, the ALJ concluded that the Plaintiff's "cardiac condition is stable" and that the "evidence does not establish cardiac impairment which is compatible with requirements specified." (ALJ Op. 4, Tr. 17.) For example, the ALJ concluded that Plaintiff's CVA itself did not meet the requirements for a "cardiac impairment," specifically stating that it did not qualify as either a "recurrent arrhythmia" or "symptomatic congenital heart disease." *Id.* §§ 4.05-4.06. The ALJ noted that the Plaintiff had recently undergone a stress test, echocardiogram and electrocardiogram and the results were all "normal." (ALJ Op. 4, Tr. 17.) The ALJ also cited the opinion of Plaintiff's treating cardiologist who reported that "she is doing well." (*Id.*)

Plaintiff's brief argues that there are a "litany of serious impairments" related to the CVA which were overlooked by the ALJ. (Pl. Br. 27.) Plaintiff lists a number of ailments that she claims "are directly attributable to [her] stroke and the larger picture of [her] cardiovascular disease." Plaintiff cites the report of Dr. Haidri. (Tr. 185 (continuing from Tr. 177), *also appearing at* Tr. 207 *et seq.*) Yet the report does not expressly attribute these ailments to the CVA.

Finally, the Court notes that Plaintiff prevailed on step two, notwithstanding that some of the ailments she suggests were "severe" were not found to be severe. Where a plaintiff has prevailed at step two, an ALJ's failure to consider other alleged ailments as

severe is *not* reversible error. *See also Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) (NOT PRECEDENTIAL) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

### B.  STEP THREE: ALJ'S ANALYSIS OF "SEVERE IMPAIRMENTS" IN COMBINATION

The regulations state that if the claimant has "a combination of impairments, no one of which meets a listing . . . [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments." 20 C.F.R. § 404.1526(b)(3). In order to find that a combination of impairments is medically equivalent to one in the listing, it must be "at least of equal medical significance." *Id.* The ALJ had an obligation to review the record and make a determination of whether the ailments in combination were equal to any of the enumerated impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, Plaintiff complains that the "administrative decision herein does not evidence any such analysis." (Pl. Br. 29.)

The Third Circuit has explained that "the ALJ [is required] to set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)). If the ALJ merely "state[s] a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment, without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning," he risks reversal unless his decision was otherwise supported by substantial evidence. *Id.* In short, a "conclusory statement [denying liability at step three which] is beyond meaningful judicial review" will, in most circumstances, justify remand. *Id.* In making his decision, the ALJ is not required to use

any particular language, as long as there is "sufficient development of the record and explanation of findings to permit meaningful [judicial] review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

The record here is sufficient to comport with the demands of judicial review. The ALJ did not merely summarily state that the "evidence shows." Rather, the ALJ's opinion developed the evidence relating to each severe impairment. *See* ALJ Op. 4-5, Tr. 17-18 (expounding separately on the evidence associated with each of three individual physical impairments, including, among others, cardiac, visual, and orthopedic impairments). For each impairment the ALJ separately concluded that Plaintiff's condition did not meet or equal the requirements as put forth in the relevant sections of the *Listing of Impairments*.

More importantly, the record here is sufficient to comport with the demands of judicial review. *First*, as already explained, each separate impairment was identified, with the evidence supporting that impairment, along with a conclusion that not one of them met or equaled a listed impairment. With regard to Plaintiff's stronger claims, i.e., the cardiac and visual impairment, the ALJ stated his conclusion with respect to specific sections in the *Listing of Impairments*. *Second*, in the step three analysis, the ALJ considered the question of whether Plaintiff's combined impairments met or equaled any listed impairment. The ALJ's opinion on three occasions expressly considered that question and found that the combined impairments did not meet that standard. (ALJ Op. 4 (two times) & 5, Tr. 17 (two times) & 18.) *Third*, the ALJ's analysis at step four also considered all of Plaintiff's impairments which illustrates that the ALJ reflected on the

13

combined effect of Plaintiff's impairments.[7] *Fourth*, the ALJ expressly noted that an independent medical expert, Dr. Martin Fechner, considered Plaintiff's combination of impairments and that Dr. Fechner determined that the combination of impairments did "not meet or equal the level of severity contemplated in the listing of impairments." (ALJ Op. 4, Tr. 17); *cf. Torres v. Comm'r of Soc. Sec.*, 279 Fed. Appx. 149, 150 (3d Cir. 2008) (NOT PRECEDENTIAL) (reversing ALJ's decision in regard to conclusory combination analysis which was unsupported by any expert's opinion and because it "overstated" the claimant's daily activities). *Fifth*, the evidentiary burden is on Plaintiff at the third step,[8] yet Plaintiff's brief fails to identify which (if any) single impairment in the *Listing of Impairments* her impairments considered in combination would meet or equal. Not only has Plaintiff not made an *evidentiary showing* in this regard, but she has failed to *proffer* or identify any such listed impairment.[9] Absent such a proffer by Plaintiff, it would appear that any error the ALJ might have made with regard to the combination analysis would be harmless,[10] particularly where, as here, the ALJ can point to some evidence in the record supporting his conclusion, i.e., the determination of the independent medical expert.

---

[7] *See Jones*, 364 F.3d at 505 (noting that in deciding whether an ALJ's decision is capable of meaningful judicial review, the courts are directed to "read [the decision] as a whole"); *O'Donnell v. Barnhart*, Civil Action No. 05-2134, 2006 WL 180552, at *2 (E.D. Pa. June 28, 2006) (upholding the ALJ's otherwise conclusory step three combined impairments analysis because the step four RFC analysis "encompassed several functional limitations attributable to various impairments").

[8] *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

[9] *See, e.g.*, *Cosby*, 231 Fed. Appx. at 146 (affirming ALJ's denial of benefits and noting that "[s]ignificantly, Cosby does not argue or even suggest which listing the ALJ should have applied").

[10] *See Rivera*, 164 Fed. Appx. at 263 (affirming ALJ's conclusory step three analysis because the error was "harmless").

C.   STEP FOUR: WAS THE ALJ'S DETERMINATION OF THE
     PLAINTIFF'S RFC BASED ON SUBSTANTIAL EVIDENCE?

It appears Plaintiff is making three discrete arguments. *First*, Plaintiff argues that the ALJ incorrectly determined Plaintiff's mental RFC. *Second*, Plaintiff argues that the ALJ incorrectly determined Plaintiff's physical RFC. And, *third*, Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective complaints of pain.

1.   Mental RFC

Plaintiff makes two challenges in regard to the ALJ's determination of Plaintiff's mental RFC. First, Plaintiff challenges the ALJ's determination relating to stress, anxiety, and panic attacks. Second, Plaintiff challenges the ALJ's rejection of the mental status assessment of the treating physician in favor of a non-treating physician.

a.   Anxiety, Stress, and Panic Attacks

Although the ALJ, in the step three analysis, recognized that Plaintiff "is limited in her ability to deal with stress due to anxiety," (Pl. Br. at 33 (quoting ALJ. Op. 5, Tr. 18)), the ALJ nevertheless, in his step four RFC analysis, determined that Plaintiff could perform jobs, other than "complex jobs and high pressure jobs," (Pl. Br. at 33 (quoting Tr. 19)). Plaintiff argues that this is error because persons subject to stress may be unable to perform simple as well as complex jobs, and may be precluded from performing in low stress positions as well as in high pressure jobs. (Pl. Br. at 35.)

Recognizing that Dr. Henry-Dindial, Plaintiff's treating physician, was of the opinion that "the claimant is incapable of even low stress jobs," (ALJ Op. 9, Tr. 22; *see also* Tr. 216 (the "Dindial Opinion")), the ALJ explained the Dindial Opinion came

absent any clinical findings supporting its conclusions. Plaintiff fails to challenge the ALJ's characterization of the Dindial opinion.

Although the ALJ rejected giving the Dindial Opinion conclusive weight, the ALJ did not give that opinion no weight at all. Instead, the ALJ determined that Plaintiff's mental RFC did not extend to "high pressure jobs." (ALJ. Op. 5, Tr. 18.) But having determined that the Dindial Opinion was not entitled to conclusive weight, there was no longer a safe basis to conclude that the Plaintiff would be unable to perform in a low stress job. The ALJ's determination that the Plaintiff's mental RFC may extend to low stress jobs, notwithstanding the Dindial Opinion, was a reasonable individualized assessment based on substantial evidence in the record. *Cf.* SSR 85-15 (calling for individualized assessments in regard to stress).

> b. The ALJ's Rejection of the Treating Physician's Opinion in Favor of a Non-Treating Physician

The ALJ stated: "Regarding [Plaintiff's] mental assessment, Dr. Henry-Dindial provided no clinical findings to support this assessment [which extended even to low stress jobs]. Clinical findings reported by Dr. Perdomo [a non-treating physician] contradict [Dr. Henry-Dindial's] assessment." (ALJ Op. 9, Tr. 22.)

Plaintiff argues that the ALJ erred here: (1) because the ALJ failed to explain how the opinions of the two physicians were inconsistent; (2) because the reports were not inconsistent; and (3) because the ALJ favored a non-treating physician over a one-time examiner. As to Plaintiff's first point, it would have been helpful had the ALJ quoted or cited a specific part of Dr. Perdomo's report. However, the Commissioner's brief points to any of a number of clinical findings in the Perdomo report which appear to support the

16

ALJ's position, including, for example, the report's global assessment of function "indicating [only] moderate symptoms." (Tr. 151.) As to Plaintiff's third point, i.e., the rejection of the treating physician's opinion, the ALJ was entitled to do that even absent Dr. Perdomo's report because Dr. Henry-Dindial's opinion was not well-supported by objective evidence or clinical assessments: a point not contested by Defendant. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (an unsupported diagnosis is not entitled to significant weight). Plaintiff's second point is more troubling. Plaintiff points out that Dr. Perdomo's report states:

> Ms. Lysak's main and dominant problems appear to be medical due to several medical problems. She has also developed significant panic attacks with agoraphobia and chronic depression. Her medical problems may affect her ability to function effectively at a job. Her panic attacks and her chronic depression will increase her disability.

(Tr. 151.) Plaintiff's position is that Dr. Perdomo's report, as quoted above, is consistent with the Dindial Opinion and so the ALJ erred when he determined that the Dindial Opinion could be rejected. As already explained the ALJ was fully entitled to give little weight to the Dindial Opinion because it came absent "clinical findings." (ALJ Op. 9, Tr. 22.) However, Plaintiff is correct in his assessment of the Perdomo report, the quotation above and other parts of the report (albeit not the report in its entirety) support the proposition that Plaintiff may be unable to perform even in a low stress position. *Compare* Tr. 151 (noting that "[p]sychosocial stressors appear to be *severe* due to

17

medical problems, panic attacks, and chronic depression") (emphasis added), *with id.* (categorizing Plaintiff's functioning as "indicating moderate symptoms").[11]

At step four, the ALJ also has a duty to discuss *all* relevant probative evidence, not merely the evidence that supports his decision but also the evidence that has been rejected, and the basis for that rejection. *Cotter*, 642 F.2d at 705. Although the ALJ had reasons to give the Dindial Opinion little weight, i.e., because it was not supported by clinical findings, the ALJ failed to fully evaluate the Perdomo report. The ALJ recognized only those aspects[12] of the Perdomo report which were consistent with his ultimate finding, but he failed to discuss those aspects which were inconsistent with it. Error in regard to the determination of Plaintiff's mental RFC is sufficient grounds to vacate and to remand to the Commission. *See Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001); *Cadillac v. Barnhart*, 84 Fed. Appx. 163, at *5 (3d Cir. 2003) (NOT PRECEDENTIAL). The function of judicial review of social security administrative proceedings is in large part to see to it that the ALJ considers all the probative evidence. Absent some discussion of the Perdomo report (particularly those aspects suggesting that Plaintiff could not perform low stress jobs), this Court is unable to tell if the ALJ "credited" or "simply ignored" apparently probative evidence. *Cotter*, 642 F.2d at 705.

---

[11] The Commissioner states that the Perdomo report found "mostly mild symptoms," (Def. Br. at 20), and that Perdomo reported the global assessment of function at "60-70." (Def. Br. at 20 (citing Tr. 151).) The report states that Plaintiff has a global assessment of functioning score of "around 60 or 70," not "60-70." Admittedly, a score of 70 is consistent with mild symptoms; but 60 is consistent with moderate symptoms. Moreover, the report expressly characterized Plaintiff's symptoms as "moderate," "significant," "chronic," and "severe." (Tr. 151.) The Commissioner's characterization of the Perdomo report is puzzling.

[12] Had the Perdomo report been uniformly consistent with the Dindial Opinion, outright reversal may have been proper. *See Allen v. Bowen*, 881 F.2d 37, 44 (3d Cir. 1989).

The Commissioner responds that the ALJ's decision can be supported by the opinion of Dr. Joynson, (Def. Br. at 15 (citing Tr. 155)), and by the opinion of Dr. Patel, (Def. Br. at 16 (citing Tr. 138)), the report of [unnamed] examiners at Trinitas Hospital, (Def. Br. at 16-17 (citing Tr. 247, 249)), and Plaintiff's own statements as to her mental abilities, (Def. Br. at 17). Defendant's brief quotes no statement in the record suggesting the Joynson, Patel, the unnamed examiners, or the Plaintiff concluded (or explained) that Plaintiff had the ability to perform satisfactorily in a low stress job. At best, the conclusion the Commissioner would have the Court draw from this evidence is an inference. Moreover, the ALJ did not rely on the Patel report or the Joynson report or the Trinitas report in his step four analysis. Essentially, the Commissioner is asking the Court to reweigh all the evidence, including the evidence noted by the ALJ in his opinion along with other evidence in the record supporting the ALJ's conclusion. Tellingly, the Commissioner's brief cites no case standing for the proposition that the role of the District Court is to reweigh evidence in this manner. The District Court's function is not to weigh the evidence, but to see to it that the ALJ weighs all the probative evidence and puts forwards reasons accounting for what evidence is considered and what evidence is rejected.[13] Once the ALJ does that, then the District Court can then evaluate if

---

[13] The Commissioner's position in akin to the position put forward by Judge Garth, in dissent, in *Cotter v. Harris*. Judge Garth suggested that in reviewing an ALJ's decision, a reviewing court should uphold the ALJ's decision even if the ALJ fails to consider contradictory evidence if the record is otherwise revelatory of substantial evidence supporting the ALJ's decision. *Cotter*, 641 F.2d at 709 (Garth, J., dissenting). The Third Circuit panel rejected this position. It goes without saying that if a reviewing court cannot affirm an ALJ's decision based on evidence the ALJ considered in circumstances where the ALJ failed to consider contradictory evidence in the record, then all the more so, a reviewing court cannot affirm an ALJ's decision based on record

"substantial evidence" in the record as a whole supports the ALJ's finding because "'[s]ubstantial evidence' can *only* be considered as supporting evidence in relationship to all the other evidence in the record." *Cotter*, 642 F.2d at 706 (emphasis added). Remand, on these facts, is especially appropriate because the parties do not agree on the report's overall characterization of Plaintiff's claims. *Compare* Def. Br. 20 (stating that Perdomo report found "mostly mild symptoms," and thereby concluding that it contradicts the opinion of the treating physician), *with* Pl. Br. 37 (arguing that the Perdomo report "clearly serves to support [rather than contradict] the opinion of the treating physician").

2.     Physical RFC

The ALJ found that: "the claimant has the residual functional capacity to perform sedentary work … which entails sitting up to 6 hours in an 8 hour workday; standing and walking up to 2 hours in an 8 hour workday …." (ALJ Op. 5-6, Tr. 18-19.) Plaintiff argues: "With regard to the plaintiff's physical RFC, the decision once again rejects the treating physician's [Dr. Henry-Dindial's] May 10, 2007 RFC which found plaintiff incapable of sitting and standing more than 15 minutes at a time … in favor of the only two doctors in the record who never examined nor treated the plaintiff." (Pl. Br. 38.)

Here, the ALJ, per *Cotter*, noted Dr. Henry-Dindial's opinion and that it contradicted the ALJ's assessment. He expressly denied giving it controlling weight because "[t]here are no clinical findings supporting [Dr. Henry-Dindial's] limited physical assessment and in a prior assessment dated April 25, 2006, this physician assessed no limitations in lifting, carrying, standing, walking, sitting, pushing, [o]r

_____

evidence the ALJ *failed* to consider (but which otherwise supports the ALJ's decision) in circumstances where the ALJ failed to consider contradictory evidence in the record.

pulling." (ALJ Op. 9, Tr. 22.) Plaintiff makes no argument, puts forward no cases or legal argument or any facts, to the effect that the ALJ's decision not to give the Dindial Opinion controlling weight constituted error.

In terms of evidence supporting the ALJ's physical RFC assessment, the ALJ recited support. This support including Dr. Fechner's testimony, (ALJ Op. 9, Tr. 22); evidence put forward by other physicians, including Dr. Warner, (ALJ Op. 7-8, Tr. 20-21); evidence relating to Plaintiff's activities of daily living, i.e., the fact that she was seeing her family practitioner on an as needed basis rather than regularly,[14] (ALJ Op. 8, Tr. 21); and, finally the fact that Plaintiff was only taking, Coumadin, and not any other medication.[15] *Id*. The ALJ reasoned that this evidence supports the conclusion that Plaintiff's "physical limitations are not as severe as alleged." *Id*.

It does not appear that the ALJ made any error in regard to assessing the Plaintiff's physical RFC.

### 3.    Pain

Finally, Plaintiff argues that the ALJ erred as a matter of law in giving insufficient consideration to Plaintiff's subjective complaints of pain. (Pl. Br. at 38-39.)

Once an ALJ determines that a claimant's impairments and the symptoms associated with those impairments have a sufficient evidentiary basis, the ALJ must determine the extent of those symptoms. This is also true of subjective symptoms relating to pain. *See Alexander v. Shalala*, 927 F. Supp. 785, 795 (D.N.J. 1995), *aff'd*, 85 F.3d 611 (3rd Cir. 1996) (TABLE). Here the ALJ put forward a rationale basis for

---

[14] *See Hartranft*, 181 F.3d at 362.

[15] *Id*.

discounting Plaintiff's claims relating to the severity of her pain. Much of that evidence was discussed in the prior section of this opinion. *See* Section IV[C][2], *supra*. With regard to pain, the ALJ expressly noted that "despite [Plaintiff's] complaints of pain in her upper extremity and in other parts of her body, she is not prescribed pain medication nor has she sought out various modalities of pain relief." (ALJ Op. 8, Tr. 21.) Plaintiff does not dispute the factual basis of the ALJ's determination. Thus, it appears to be supported by a substantial basis in the record.[16]

## V.    CONCLUSION

For the foregoing reasons, this Court finds that the ALJ's analysis erred at the fourth step of the five step analysis, and that the ALJ's conclusion was not supported by substantial evidence in the record. Consequently, the Commissioner's decision denying DIB and SSIB to Plaintiff Athena Michelle Lysak is **VACATED** and **REMANDED** for reconsideration consistent with the opinion. An appropriate order accompanies this Memorandum Opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

DATE: November 4, 2009

---

[16] The ALJ's determination at step five that Plaintiff could perform as a surveillance system monitor, notwithstanding her vision problems and difficulties relating to pace etc., was puzzling.